RACHEL GAYLORD, PHILEMON GAYLORD, JOSEPH GAYLORD, DAVID GAYLORD, CHARLES F. DICKENSON, GEORGE GRAHAM and ELIZABETH GRAHAM, his wife, *against* THOMAS COUCH:

IN ERROR.

THIS was a petition in chancery, brought by *Couch* against the plaintiffs in error.

It was alleged in the petition, that on the 30th day of *June*, 1798, the petitioner was indebted to one *David Tibballs*, in the sum of 18*l.* for which he held his promissory note, and also, in certain other sums, amounting to the sum of about 100 dollars, for which he also held certain other promissory notes; that to secure the payment of the sums contained in such notes, the petitioner, on the day last mentioned, by deed of bargain

*A.* conveyed a piece of land to *B.* by an absolute deed, as security for a debt; *B.* at the same time, executed a bond to *A.* obligating himself to reconvey the land when the debt should be paid. Afterwards, it was agreed between them, by parol, that *A.* should deliver up the bond to *B.* for the purpose of enabling him to assist *A.* in effecting a settlement with a certain creditor, and that *B.* should redeliver the bond to *A.* uncancelled, when the object should be effected. The settlement with the creditor being effected, and the debt due to *B.* being paid, *B.* refused to redeliver the bond, and cancelled it. Held, that such parol agreement was within the provisions of the statute against fraudulent conveyances.

Held, also, that more than three years having elapsed between the time of making such agreement, and the commencement of the suit, the cause of action was barred by the statute of limitations.

A court of chancery, in passing a decree, will notice such facts only, as are alleged in the petition. A decree of setoff, therefore, founded on facts, appearing by the finding of a committee merely, is erroneous.

Independent claims, except in case of bankruptcy, cannot be setoff.

Nov. 1811.

GAYLORD
*v.*
COUCH.

and sale, conveyed to *Tibballs*, a certain tract of land; and that upon the delivery of the deed, *Tibballs* executed and delivered to the petitioner, a bond, stipulating, that upon the payment of the money contained in the notes, the land should be reconveyed; that in the year 1802, (the amount of the notes not being fully paid,) it was agreed between them, by parol, for the purpose of enabling *Tibballs* to assist the petitioner in the adjustment of certain other claims, outstanding against him, that he should deliver up the bond to *Tibballs*, to be by him retained, until such adjustment should be effected, the bond, in such case, to be redelivered to the petitioner; that the bond was delivered up in pursuance of the agreement; that in *January*, 1807, such outstanding claims were adjusted, and that thereupon, the petitioner requested *Tibballs* to redeliver the bond; that *Tibballs*, from time to time, delayed to redeliver the same, and retained it in his possession, until his death, which happened in *October*, 1807.

*Rachel Gaylord*, and *Elizabeth Graham* were described as the heirs at law of *David Tibballs*, and *Philemon Gaylord* and *David Gaylord*, as his administrators, and *Charles F. Dickenson* and *Joseph Gaylord* as purchasers of *Elizabeth Graham's* right, to the land conveyed to *Tibballs* by the petitioner.

It was also alleged, that the sums expressed in the several promissory notes before mentioned, had been paid to *Tibballs*, and the notes cancelled, previous to his death, but remained in his possession at the time of his death, and together with the bond, went into the possession of his administrators; and that they refused to deliver to the petitioner either the notes or the bond. The specific relief, prayed for, was a reconveyance of the land.

A committee was appointed to examine and report the facts in the case; and all the material allegations in the petition, were by them found to be true.

The committee then proceeded to the investigation of certain other facts, which were not stated in the petition. They found, that the bond executed by *Tibballs* to the petitioner, when it came into the possession of his administrators, was

cancelled ; and also, that certain promissory notes, executed by the petitioner, in favour of *Tibballs*, were found among his papers, and came into the possession of his administrators, upon which the sum of about 800 dollars was justly due.

Upon this report of the committee, the Superior Court decreed, that the administrators of *Tibballs*, should deliver up and cancel, of the notes last mentioned, the amount of 500 dollars. To reverse this decree, the present writ of error was brought.

*N. B. Benedict*, for the plaintiffs in error, contended,

1. That the petitioner was not entitled to any relief.

2. That if any relief whatever, could be granted, that which had been granted, was improper.

*Daggett* and *Gould,* contra.

SMITH, J. This is a writ of error, brought to reverse a decree of the Superior Court, sitting as a court of chancery, passed upon a petition in which *Thomas Couch* was petitioner, and *Rachel Gaylord,* and others, administrators of the estate of *David Tibballs,* deceased, were respondents. A committee was appointed, by the court below, to report the facts in the case; whose finding must have been the basis of the decree, passed by the court, and will be the foundation of my opinion. It will be unnecessary for me, to notice all the facts, found by the committee, which they, however, reported at great length. I will only state such, as appear to me, important to the result, which my own deliberations and judgment have led me to form.

The committee find, that on the 30th day of *June,* 1798, *Couch* was indebted to *Tibballs,* to a certain amount ; whereupon, he conveyed to him, by deed, a tract of land, and took a bond for reconveyance, when the debt should be paid; which deed he held, until sometime in the year 1802; when it was, by *Couch,* put into the hands of *Tibballs,* to enable him to assist *Couch,* in a settlement with one of his creditors, and to prevent that creditor from taking the land. And, at

the same time, it was, by a parol agreement entered into between the parties, stipulated, that the bond should be returned, uncancelled, and in full force, when a settlement with such creditor, should be effected; or, the lands recorded, agreeably to the provisions of the bond.

They also find, that the creditor was settled with ; but that the bond was not redelivered, nor the land recorded. They then proceed to state, that a great number of notes of hand, which *Tibballs* held against *Couch*, at the time of his death, and which came into the possession of his administrators, were unpaid, and justly due. These notes are not mentioned in the petition ; nor is there any allusion to, or prayer regarding them; and they appear to be altogether distinct from, and no way connected with any facts stated in the petition. Nor, does it appear, by the finding of the committee, or otherwise, that the estate of *Tibballs* was insolvent ; or, that any difficulty or embarrassment, whatever, existed in obtaining the damages, to which *Couch* might be entitled.

The court, then, proceeded to decree, that the administrators should deliver up, and cancel, of such notes, to the amount of 500 dollars.

This decree is, in my judgment, erroneous, on several grounds.

1. The bond was delivered up by *Couch* to *Tibballs*, upon an agreement to defraud creditors, within the meaning of our statute against fraudulent conveyances ; which renders the transfer, as between the parties, absolute, and nullifies any agreement to return the bond.

It was argued, at the bar, that no fraud was found by the committee ; and that the court cannot infer fraud. I admit, that the words " fraud," or " fraudulent," are not used by the committee. I admit, also, that a fraudulent intent cannot be inferred, by the court, from any other facts, whatever. The question, then, is, whether such intent is found by the committee, in language clearly intelligible to the court ? If so, it becomes very important what that language is. The committee find, that the bond was put into the hands of *Tibballs*, to *prevent a creditor from obtaining the land.* Here is the

object of the parties, and their intent, clearly expressed in language which cannot be mistaken. What other is this, than a fraudulent transaction? If to put property into the hands of another, to prevent creditors from taking it, be not fraudulent, language has not the power of expressing fraud. This transfer had no other object, than to create a secret trust, for the future benefit of *Couch*. *Tibballs* had no power, by the agreement, to transfer the bond, or the land, or to do any thing, except to hold it, until the happening of a certain contingency, and then deliver it up to *Couch*.

When the object of a whole contract, is found to be the creation of a trust, for the future benefit of the grantor, to the injury of creditors, there can be no doubt as to the intent.

It was argued further, that the bond was put into the hands of *Tibballs*, for the purpose of enabling him to assist *Couch*, in settling with a creditor; and that this could not be to defraud him. Here it becomes necessary to enquire, how, and in what sense, the delivery of this bond, was to enable *Tibballs* to assist *Couch*, in settling with a creditor? Was it to enable *Tibballs*, by a sale of the property, to pay the debt? If so, the transaction would be perfectly free from any imputation of fraud. But this, as I have already stated, was not the case; there was no power of transfer, given by the agreement; and the property was to be delivered back, at all events, when the creditor should be settled with.

The question, then, recurs, how was the delivery of this bond to be the means of facilitating a settlement with a creditor? The finding of the committee, furnishes a direct answer. It was, by preventing that creditor from obtaining the land; or, in other words, by withdrawing from the creditor, all ostensible means of satisfying his debt; the value of it is to be diminished, and thereby an advantageous settlement, effected. The object, then, of these parties, was clearly to defraud a creditor; and whether it was to defraud him out of his whole debt, or a part only, can make no difference.

It has been argued, also, that this bond was a mere *chose in action*, not subject to be taken by attachment, or execution, and therefore, the transfer could do a creditor no harm. I

have no doubt, that the transfer of a chose in action, to defraud creditors, is as much within the statute, as a transfer of property in possession. If choses in action cannot be taken, by a common attachment or execution, they are, frequently, not beyond the reach of process, by foreign attachment; and the possession of them may prevent the possessor, from taking the oath provided for poor imprisoned debtors.— Should a debtor, in failing circumstances, convey all his notes of hand, to a trustee, for the purpose of being enabled to hold himself out as a man destitute of property, and in that way, by a settlement, defraud his creditors out of a part of their demands, I should not hesitate to pronounce a contract, so foul and corrupt, to be a fraudulent conveyance, within the statute.

In the present case, however, the transfer was really a transfer of an interest in land. The bond, taken at the time when a clear deed was given, created an equity in the grantor, which might be well taken by his creditors ; and the delivery of the bond, was really a transfer of that equity. So that, the argument fails, in every point of light in which it can be viewed.

Again, it was argued, that this agreement, to redeliver the bond, is good between the parties, and void, by statute, only as to creditors. But the statute, by declaring the agreement of the bond to be good, as between the parties, virtually declares the agreement creating a trust to be void. The law leaves the parties where it finds them. A contract which has been executed, cannot be defeated, while that which is executory merely, cannot be enforced. The argument totally subverts the meaning of the statute, which goes upon the ground of enforcing the secret trust, as to creditors, by giving them the full benefit of it ; but, as between the parties, the law considers the conveyance, as good and valid ; and renders void any agreement, which is inconsistent with what such transfer appears to be, upon the face of it.

It has also been said, that a man may convey away a part of his estate, to keep it out of the reach of creditors; provided, he has enough left to satisfy their demands. If such a posi-

tion be correct, in point of law, there could be no application of it to the present case, until it first be shewn, that the petitioner had other estate, sufficient to pay his debts ; which does not appear. But the position is not a correct one. There have been cases of conveyances to children, I admit, where the grantor was indebted at the time, but had sufficient estate left to pay all his debts, in which, it has been held, that the conveyance was not within the statute. These decisions have been governed by the principle, that all presumption of fraudulent intent, is removed by the consideration of the fact, that other and sufficient estate was left in the possession of the grantor. But no case can be found of a conveyance to a stranger, and a fraudulent intent found, as in the present case, where it has been held, not to come within the statute, merely because there is other estate left in the possession of the grantor.

The statute authorising the levy of executions on lands, has wisely put the power of choice in the creditor, so that in case his debtor fails to pay his just debt, he may levy on any part of his lands, to satisfy his demand, at his election. But if the argument I oppose, is well founded, then the debtor may convey a large portion of his estate to a friend, for the avowed purpose of defeating this right of election, and in this way, make the election himself, and compel his creditor to take such land as he pleases.

2. But if this agreement had been free from fraud, the claim is barred by the statute of limitations ; which provides, that no suit in law or equity shall be brought or maintained, upon any contract or agreement that shall be made, and not reduced to writing, but within three years next after entering into, or making the same. In this case, more than three years had intervened between entering into this parol agreement, and the institution of the present suit. And here was no sufficient acknowledgment found by the committee, to take the case out of the statute.

3. But suppose the case delivered from these objections, and that the petitioner is entitled to damages, for a breach of this agreement, still the decree of set-off, is clearly erroneous,

on two grounds. In the first place, the facts stated in the petition, and the rights and duties resulting from these facts, are, and must be, the only basis of the decree; and any finding of the committee, relating to notes of hand not stated in the petition, must stand for nothing. Hence, it follows, that the decree of the court, founded on the fact that these notes existed, and affecting rights resulting from these facts, must be erroneous. As to such facts and such rights, the respondent had no day in court, nor any opportunity to defend against them. Let it not be said, that it is equally as convenient for the defendant to give up these notes, as to collect them, and pay the money by way of damages. This would amount to saying, that the court may make a decree without a petition, or even without parties, if they happen to do what is convenient; but the party has a right to be heard before his rights are affected; and for this reason, he ought to be notified, with all necessary allegations, as well in chancery, as at law. Besides, the notes might have been put in suit, and suits might have been pending, on which large bills of costs had accrued; which, by giving up, or cancelling them, in obedience to the decree, the party would not only lose, but subject himself to pay costs to the adverse party; and these facts might have been shewn, had he been notified, by regular allegations and process, that such claim would be made.

4. If the court could notice the facts found by the committee, not stated in the petition; yet, there is no principle of equity, which will warrant the setting off distinct and independent claims, against each other; unless on the ground of insolvency, which does not appear, in the present case, by the finding of the committee.

SWIFT, EDMOND, BRAINARD, and INGERSOLL, Js. concurred in this opinion.

BALDWIN, J. By the errors assigned in this writ, and from the argument of the case, our enquiries may be directed to two objects:

1. Whether the petitioner is entitled to any relief ?

2. Whether the relief given is proper ?

The principal objection to any relief seems to be, that the bond was delivered to *Tibballs* by *Couch*, with a view to prevent a creditor of *Couch* from obtaining the bond. This, it is claimed, is, *per se*, fraudulent, and, of course, will not be enforced by courts of justice. The charge of fraud ought not to prevent our understanding the facts. These depend on the report of the committee. It is, indeed, expressly found, that the bond was delivered to *Tibballs* to prevent a creditor from taking the land, and to enable *Tibballs* to assist *Couch* in a settlement with that creditor; but it is not found, nor is it admitted, that this was done with design to defraud the creditor, nor does it appear that the creditor was in fact defrauded. It cannot, therefore, be inferred, that such was the design. On the contrary, as such fraudulent design does not appear, we are to presume it did not exist. It is, however, still further contended, that the law will not permit a debtor to secrete any part of his estate, so as to prevent the process of law against it, and thereby compel the creditor to resort to less acceptable property, and that such an attempt is, in contemplation of law, fraudulent. This principle I cannot admit. No injury, surely, is done to the creditor, if he finds property sufficient to satisfy his demands. Most men have peculiar attachments to some particular species of their property ;—it may be fancy, or it may be something more solid, that makes it valuable to them, beyond its worth. Now, to me, it appears unreasonable to compel the debtor to subject such property to the caprice of creditors, when other property, sufficient to satisfy their claims, is in open view. The object of the law is the satisfaction of the debt, in money. Whatever personal property, therefore, is taken, may be redeemed by money, during twenty days, and if not redeemed, must then be sold, and converted into money. Money will also extricate lands from the grasp of the creditor, at any time before his title is completed. So long, therefore, as other sufficient estate is left open to the demands of the creditor, I cannot consider it, either as a fraudulent or an illegal

act in the debtor to screen particular property from the view or process of the creditor. But if the transaction had been found fraudulent, it would have been void only as it respects creditors.

Another objection is, that the contract set forth in the petition, is by parol, and was made more than three years ago. The answer to both these objections is satisfactory and conclusive, *viz.* That the contract was executed, on the part of the petitioner, and was, therefore, binding on the other party, notwithstanding the statute of frauds ; and that in consideration thereof, the promise on the part of *Tibballs*, is found to have been repeatedly renewed, and that within six weeks of his death.

It appears to me, therefore, that the petitioner is entitled to relief of some sort. The enquiry then is, whether the relief granted is proper.

The prayer is not only specific, but general. From the facts disclosed, it became evident, that a specific execution of the contract, so far as respects the bond, could not be enforced. The bond had been cancelled by the deceased, and the legal title to the land, had passed from the heirs to *bona fide* purchasers. The relief peculiarly appropriate to this state of things, seems to be, to reimburse the petitioner from the personal fund of the deceased. This has been done, by applying the value of the land which the petitioner has lost, and which the estate of the deceased has thus acquired, to the discharge of so much of the debt due from the petitioner to that estate. This appears to me to be clearly within the power of a court of chancery ; to be equitable between the parties ; and terminates at once a controversy, which, if specifically decreed, would result in a pecuniary reimbursement from the heirs to the purchasers.

I would, therefore, affirm the decree of the Superior Court.

MITCHELL, Ch. J. REEVE, and TRUMBULL, Js. concurred in the opinion delivered by *Baldwin*, J.

Judgment of the Superior Court reversed.