*Fairfield,*
June, 1839.

Beers
*v.*
Botsford.

BEERS and others *against* BOTSFORD:

IN ERROR.

Where *A*, the owner of three distinct pieces of land, mortgaged, by one deed, the first and second pieces, and by another deed, the second and third pieces; after which *B*, a creditor of *A*, levied an execution on *A*'s equity of redemption, in the three pieces, which were severally appraised; and then such a proportion of *A's* right in all the lands as the amount of the execution bore to the difference between the amount of the appraised values of the lands and the amount of the incumbrances, was set off to *B;* it was held, that such levy was legal and valid.

Where it appeared from the finding of the court on a bill in chancery, that a certain debt by note, for which the plaintiff had obtained judgment and execution against *G*, and had levied the execution on *G's* land, was not the debt of *G* only, but of *G* and other makers of the note, and that the note was paid, by such other makers; it was held, that these facts were not available to impeach the plaintiff's title under the execution.

Where a man who has claims pending over him, selects a certain portion of his property and conveys it to a friend, with a view to conceal it or cover it from those claims; it is in law a fraudulent conveyance.

If the facts found as the basis of a decree in chancery are substantially the same as those alleged in the bill, it is not a ground of error in the decree, that they vary in some unimportant particulars.

THIS was a bill in chancery, brought by *Daniel Botsford,* as executor of *Moses Botsford,* deceased, against *Lemuel Beers* and others, to obtain the legal title to real estate. The case came before this court, on a demurrer to the bill, *June* term, 1836; when the demurrer was over-ruled. 11 *Conn. Rep.* 369—375. The defendants afterwards put in a general answer to the bill; and there was a hearing, on the bill and answer, before the superior court in *Fairfield* county, *April* term, 1838.

The bill alleged, that the plaintiff, as executor of the last will of *Moses Botsford,* deceased, in *November,* 1832, recovered a judgment against *Amos* and *George Shepard,* and levied his execution upon certain land described; that *A.* and *G. Shepard* were the sole equitable owners of the land so levied upon, but had not the legal title; that said land, in *February,* 1810, was owned by one *Elias Glover,* who was indebted in the sum of 976 dollars to *Titus Street* and *Æneas Monson,* by note, dated 5th *April,* 1799, which belonged to *A.* and *G. Shepard;* and judgment was obtained thereon for

their benefit, in the name of *Street* and *Monson*, against *Glover*, for the sum of 1614 dollars, 63 cents ; that an execution issued thereon was levied on this and other lands of *Glover*, subject to a mortgage to *Daniel Beers* and other incumbrances, and such land was set off, in due form, to *Street* and *Monson*, but in trust and for the sole benefit of *A.* and *G. Shepard;* but that before this levy, the execution came into the hands of *Moses Botsford*, who held it as his security for having been bound for *A.* and *G. Shepard* to *Street* and *Monson* for the consideration money, for which they sold said note to *A.* and *G. Shepard;* that by their direction, said execution was put into the hands of *Peter Shepard*, the son of *George*, and *Henry Shepard*, the son of *Amos*, for collection, who gave their receipt to *Moses Botsford* therefor, guarantied by them to him, for his security, and by direction of *A.* and *G. Shepard*, for whose benefit and subject to whose controul it was received by *Peter* and *Henry Shepard ;* that *A.* and *G. Shepard* caused *Moses Botsford* to be fully indemnified and saved harmless of his obligation, and purchased in and redeemed the mortgage of *Daniel Beers* and all other incumbrances on the property, and caused a release deed by *Street* and *Monson* and by *Daniel Beers* of their respective rights, duly authenticated, to be given to *Peter* and *Henry Shepard*, in *October*, 1811, and *February*, 1812 ; and all other titles to and incumbrances on the premises were duly conveyed to, and at law vested in, *Peter* and *Henry Shepard*, at the expense and procurement of *A.* and *G. Shepard ;* and that *Peter* and *Henry Shepard* received the same, and took possession thereof, as trustees for *A.* and *G. Shepard*, and for their sole benefit ; and that *A.* and *G. Shepard* continued in equity the sole proprietors, and *Peter* and *Henry Shepard* never paid, and were never to pay, any thing therefor.    The bill also charged, that said conveyance was made to defraud the creditors of *A.* and *G. Shepard*, they then being deeply embarrassed, and to cover and protect the property from their creditors, and for no valuable consideration.

The court found the debt to the plaintiff, the judgment and the levy of the execution, as stated in the bill.    The court further found, that on the 20th of *March*, 1810, and before, *Elias Glover* was owner of the land levied on, and other lands encumbered by a mortgage to *Daniel Beers* and others ; that in *April*, 1799, *Glover*, *Amos* and *George Shepard* and others

*Fairfield,*
*June, 1839.*

Beers
*v.*
Botsford.

were indebted to *Street* and *Monson,* by a note for 976 dollars, given in consideration of a loan from the school fund for the benefit of the promisers, and for which *Street* and *Monson* gave their bond to the state treasurer ; that on the 2nd of *April,* 1801, *Moses Botsford,* acting for and in behalf of the promisers in said note, gave his own bond to the treasurer, in place of that of *Street* and *Monson,* and took from them an assignment of said note and a mortgage predicated thereon ; that this note remained in the hands of *Botsford* until judgment was recovered thereon in *February,* 1810, in favour of *Street* and *Monson* against *Glover,* for the sum and in the manner stated in the bill ; that on the 20th of *March,* 1810, *Botsford,* by the advice and procurement of *A.* and *G. Shepard,* delivered said execution to *Peter* and *Henry Shepard* and took their receipt therefor, promising to account to him for the moneys collected thereon ; that on the 23rd of *June,* 1810, by direction of *P.* and *H. Shepard,* said execution was levied on an undivided portion of the equity of redemption in the land in question, which was duly set off ; that in *April,* 1813, *A.* and *G. Shepard* made their written guaranty on the receipt given by *P.* and *H. Shepard,* but nothing has been paid thereon ; that after the levy, *A.* and *G. Shepard* purchased and redeemed the mortgage to *Daniel Beers* and the other incumbrances on the land, *Glover's* equity of redemption therein having been previously foreclosed ; and that they procured deeds of quit-claim from the mortgagees, and also from *Street* and *Monson,* to be executed and delivered to *P.* and *H. Shepard,* whereby they became vested with a complete legal title to the land ; that *A.* and *G. Shepard* have uniformly paid the interest on the debt due to the school fund and the principal, except that part for which the judgment of the plaintiff was obtained ; that *P.* and *H. Shepard* have never paid any thing therefor, nor ever claimed to own said land, but ever since the levy in 1810, have held the same exclusively of *Glover* and all claiming under him, as trustees of *A.* and *G. Shepard,* and recognising their equitable title thereto ; nor has *Glover,* or any person under him, asserted any claim to the premises ; that previous to these transactions, *A.* and *G. Shepard* had been concerned in speculations in *Virginia* lands ; and that their object and that of *P.* and *H. Shepard,* in causing the conveyances to be made to the latter, was, to protect said land against claims growing out

of said speculations, which *A.* and *G. Shepard* were apprehensive might be brought against them; but that ever since said levy in 1810, *A.* and *G. Shepard* have been in possession of large real and personal estates, and have been abundantly able to pay their debts; and that at the time of the levy of the plaintiff's execution, they were in the possession of land unencumbered, much more than sufficient to satisfy said execution.

*Fairfield,*
*June, 1839.*

Beers
*v.*
Botsford.

It appeared also, that the execution in favour of *Street* and *Monson* was levied upon *Glover's* equity of redemption in three distinct pieces of land; the first of which was appraised at 629 dollars; the second, at 3,480 dollars, 25 cents; and the third, at 305 dollars,—amounting to 4,414 dollars, 25 cents; that *Glover* had placed mortgages upon the first and second pieces of this land, and mortgages also upon the second and third pieces, amounting to 2,065 dollars, 88 cents; leaving the sum of 2,348 dollars, 37 cents, as the true and just value of all the lands levied on, to the creditors named in the execution; and that the officer set off to such creditors all the right and title of the debtor in and to such lands, in proportion as 1,683 dollars, 2 cents, [the amount of the execution and fees] is to 2,348 dollars, 37 cents, in full satisfaction of the execution and fees.

The court passed a decree in favour of the plaintiff; and the defendants, claiming that the levy was irregular and void, moved for a new trial on that ground, and claiming also that the decree should have been in their favour, brought the record, by motion in error, before this court, for revision.

*Betts* and *Dutton,* for the plaintiff in error, and in support of the motion, contended, 1. That the levy of *Street* and *Monson's* execution was void. Unequal interests in different pieces of land cannot be combined and made the subject of one and the same levy. The creditor must take the whole of the debtor's right in one tract before he can take any portion of another. *Starr* v. *Leavitt,* 2 *Conn. Rep.* 243. *Hinman* v. *Leavenworth, Id.* 244. n. The proceeding in this case was not in accordance with the practice recognized by the court. *Porter* v. *Seabor* & al. 2 *Root* 146. *Franklin* v. *Gorham,* 2 *Day* 142. *Osborn* v. *Carr,* 12 *Conn. Rep.* 195. The sums to be contributed are in proportion to the values of the several tracts of land.

2. That the plaintiff was not entitled to a decree in his favour. In the first place, the facts found shew, that *Peter* and *Henry Shepard* acted as agents of *Moses Botsford,* or on their own account. Secondly, if they acted as agents of *Amos* and *George Shepard,* the debt was paid before the levy. Equity will not aid to carry out a fraud. Thirdly, *Amos* and *George Shepard* were joint promisers with *Glover :* of course, he retained an interest in the avails of the note. *Moses* v. *Murgatroyd,* 1 *Johns. Ch. Rep.* 119. *Homer* v. *Savings Bank,* 7 *Conn. Rep.* 478. *Murray* & al. v. *Ballou* & al. 1 *Johns. Ch. Rep.* 566. Fourthly, the court have not found the fraud, but only *evidence* of it. This will not sustain the decree. Fifthly, the facts found, which are not alleged in the bill, cannot be used to sustain the decree. [The counsel specified several instances of discrepancy between the allegations in the bill and the finding of the court—*i. e.* where the facts alleged were not found, or where the facts found were not alleged.] In chancery, as well as at law, relief can be had only *secundum allegata et probata.* A finding of matters not alleged is *extra-judicial.*

*Bissell,* contra, insisted, 1. That the levy was regular and valid. An equity of redemption—*i. e.* the right of the mortgagor—is an entire thing ; and this is, precisely, what it is the object of the levy to transfer. *Allyn* & al. v. *Burbank* & al. 9 *Conn. Rep.* 151. A levying creditor is not to be made a tenant in common with the debtor, except from *necessity ;* but here the levy could be made in no other way. If this mode of levying the execution is not sanctioned, it cannot be levied at all.

2. That the plaintiff was entitled to the relief sought; the facts found being sufficient, and those facts being substantially alleged in the bill. *Whittlesey* v. *McMahon,* 10 *Conn. Rep.* 137. [The several objections urged against the decree were replied to.]

WILLIAMS, Ch. J. The principal objection urged against the decree of the superior court, was, to the title acquired under the levy of the execution of *Street* and *Monson.* And as this title depends upon the levy of *Street* and *Monson's* execution, if that is void, the plaintiff's case must fail. Was that levy properly made?

The claim of the defendants is, that the executor should have selected one or more of the pieces of land, sufficient to satisfy the execution, and not have extended it over the whole ; and it is compared to the levy of an execution upon lands held in common, by distinct titles. *Starr* v. *Leavitt, 2 Conn. Rep.* 246. The general law provides, that lands shall be taken by metes and bounds : when that cannot be done, the levy is to be made upon such principles as will best do justice to all the parties. This court has decided, that an equity of redemption is indivisible. Of course, in case of one mortgage upon a single piece of land, the creditor must levy upon the whole, and set off such part or proportion as his debt bears to the whole value of the equity of redemption. *Scripture* v. *Johnson, 3 Conn. Rep.* 213. For, as the lien is spread over every part of the land, so is the equity in every part of the land. Neither can be limited, except by the boundaries of the tract itself. And where one mortgage is over several tracts, the same principle must prevail. You can no more divide or limit the lien in that case, (nor of course the equity) than in the other. In such case, then, a levying creditor could no more select one of the tracts to place his execution upon, than he could divide a single tract, where the security was ample for the mortgage creditor and the levying creditor. If appraisers could estimate what a distinct piece of land should pay, what should prevent their making a similar estimate of a part of a piece of land, the bounds of which were designated by the sheriff ? It is admitted, that an equity of redemption is indivisible, as it respects the debtor. But if a different rule exists with respect to the creditor, it is not perceived why it should not be equally applicable, whether the mortgage was confined to one tract of land, or embraced several. The only doubt, then, in this case, must arise from this fact, that no one mortgage extends over every piece of land. Some of the mortgages extend over the first and second pieces, and some over the second and third pieces ; so that the second piece forms a connecting link between the first and third pieces ; and we see not why the value of the equity of the third piece, for example, may not be affected, by the value of the first piece, in the same manner as if they were connected by one joint mortgage : for the less the first piece sells for, or the less burthen it bears, the greater is the lien on the second ; and of course, the less it will bear of the joint lien upon the

second and third; and so *vice versa.* We think, therefore, this equity is the same as if the mortgage extended over all those several pieces of land.

It was said in the argument, that the levy might have been upon one piece, and an estimate made of what the others should contribute; or one piece, say the second, might have been taken and charged with all the incumbrances.

As to the first mode; it is enough to say, that the appraisers are to appraise the land presented to them, which has been levied upon, but are not charged with estimating what other lands should contribute. And no such estimate could govern a court of chancery upon this subject. They are to appraise the debtor's interest in the land taken, and not the value of lands not levied upon.

As to the other mode proposed of taking one piece charged with the whole incumbrance; if that might be done in this case, we see not why it might not be done in every case, where there is a single mortgage with an equity of redemption more than sufficient to pay the debts; and so the whole course of decisions upon this subject would be overturned. *Punderson* v. *Brown,* 1 *Day* 93. Of the other cases cited, without going into a particular examination of them, it is enough to say, that we think they bear very remotely on this question. We are entirely satisfied, that the levy was correctly made.

The objections to the decree arising upon the motion in error, are, 1. that the facts stated and proved show no equitable title in *A.* and *G. Shepard,* and lay no foundation for the decree; and 2. that the facts found do not comport with those alleged in the bill.

As to the first. It is objected to the plaintiff's title, that the *Shepards* acquired no equitable title to this land, by their levy, because it is found, that the debt to *Street* and *Monson* was not the debt of *Glover* only, but of the *Shepards* and the other promisers in the note; and that in fact, it was paid by the promisers, and not by the *Shepards.* It is indeed found, that the promisers were indebted to *Street* and *Monson,* and that the debt was paid by *Botsford,* in the manner stated, in behalf of the promisers. Now, if it is claimed, that the note was paid by the promisers, then it should have been pleaded to the action brought upon it, and a judgment prevented. As the judgment has been obtained, this court must treat it as having been properly obtained.

If it is claimed, that it is not in equity due to the *Shepards,* for they did not pay it, but to *Botsford,* the answer is, that it is found, that *Botsford* acted in behalf of the promisers, and that the *Shepards* have paid all that debt but about 900 dollars, which is the very debt now sought to be charged on the property in question.

It is said further, that as *Glover* and the *Shepards* were joint promisers and jointly indebted, it was the duty of the *Shepards* to pay at least a proportion of the debt, and not charge it all upon *Glover.* Now, if this claim were well founded, this should have been set up in the court below, by way of objection to this decree. But after the *Shepards* have obtained judgment upon this note, and levied their execution upon this property of *Glover,* and their creditors have attached this as their property, they surely cannot, in this stage of the case, be permitted to say, that their title to it is not what it purports to be, because it was their duty to pay a part of the debt. One of the counsel seemed to go farther back, and to claim, that *Street* and *Monson* were merely sureties, and had to pay nothing. They were debtors to the state for the money, and not sureties; and *Glover* and *A.* and *G. Shepard* were not known to the school fund office: of course, they were creditors as much as if they had drawn the money from the bank upon their note or deposites.

It was also said, that *Botsford,* having had the equitable title, if he gave it up, he can now have no claim. But if he held it only for security, and he gave his security to his debtor, it surely would not discharge his debt, or bar his equity.

It was also said, that if there was any fraud, he was party to it; and therefore, has no right. But there is no evidence that he knew of the object of the *Shepards* in this arrangement.

Again, it is said, that the fact charged that the conveyance to *P.* and *H. Shepard* was made to defraud creditors, is not found by the court. It is not indeed found in the words in which it is charged. The court find, however, that *A.* and *G. Shepard* had been engaged in speculation in *Virginia* lands, and that said conveyance was made to protect those lands against demands arising out of said speculation, which they were apprehensive might be brought against them; that nothing was paid for them, by the sons; but they have always

held them as trustees of *A.* and *G. Shepard.* And it seems to the court, that where claims are pending over a man, and he selects a certain portion of his property, to conceal it or cover it from those claims, and conveys it to a friend, meaning to keep it from those creditors, it is in law a fraudulent conveyance. It is said by *Smith,* J. in *Gaylord* v. *Couch,* 5 *Day,* 227. " If to put property into the hands of another, to prevent creditors from taking it, be not fraudulent, language has not the power of expressing fraud." The court have decided, that when the question is, whether a conveyance is *in fact* fraudulent, it is a matter which we cannot in this court decide. *Weeden* v. *Hawes,* 10 *Conn. Rep.* 50. 54. But where the question arises upon certain facts found, whether these facts constitute a deed fraudulent in law, the fraud is the judgment of law upon the facts and intents. 1 *Burr.* 474. The intent being to keep it from these claims, the law infers fraud ; and it has been already decided in this case, that the fact of the party being possessed of other property, is not sufficient to prevent its being fraudulent. 11 *Conn. Rep.* 369.

It is further objected to this decree, that the facts found by the court do not comport with the facts alleged in the bill. First, it is said that the bill states the debt to *Street* and *Monson,* as a debt due from *Glover,* whereas in fact it was due from him and *A.* and *G. Shepard* and others. The debt was due to *Street* and *Monson* from all of the promisers ; but as between themselves, it might be due from one of them only. And from the manner in which the parties have treated it, we think such must have been the fact ; and the facts found by the court are not inconsistent with it.

Again, it is objected, that the bill avers, that the judgment was recovered upon this note for the benefit of *A.* and *G. Shepard,* and that it belonged to them ; and that they were proprietors of the judgment and execution ; and that *Botsford* held it merely by assignment from them as surety ; and the court find the facts very differently. The court find, that *Moses Botsford,* in behalf of the promisers in the note, made a settlement with *Street* and *Monson,* gave his own bond to the treasurer, and took an assignment of the note from *Street* and *Monson* as security ; that judgment was recovered thereon, as stated in the bill ; that *Moses Botsford,* by the advice and procurement of *A.* and *G. Shepard,* delivered the execution to

*P.* and *H. Shepard,* and took their receipt therefor, to account with him for all sums collected thereon ; and that they, with the advice and procurement of *A.* and *G. Shepard,* levied the same on the land in question ; that *A.* and *G. Shepard* have since paid all the amount of said debts, except what is sought to be recovered by this bill ; and that they have ever since held it as trustees of *A.* and *G. Shepard.* The substantial facts in this part of the case stated in the bill, are, that the property levied upon is really in equity the property of *A.* and *G. Shepard,* though *Botsford* held the note as security for his advancements. The facts found are, that *Street* and *Monson* assigned the notes to *Botsford* as security for him ; that he, after judgment recovered, by the advice and procurement of *A.* and *G. Shepard,* put it into the hands of *P.* and *H. Shepard* to collect; that they levied it, by the advice and procurement of *A.* and *G. Shepard,* on the land in question ; and that *A.* and *G. Shepard* have made all the payments, except 900 dollars, and have procured deeds from the mortgagees and levying creditors, to be given to *P.* and *H. Shepard,* who, for many years, have held possession thereof, as trustees of *A.* and *G. Shepard.* These facts, therefore, support the substantial facts in the bill, though varying, in some unimportant particulars. We think, therefore, that the case has been properly disposed of.

The other Judges were of the same opinion, except SHERMAN, J., who gave no opinion, having been of counsel in the suit.

Judgment affirmed ;

New trial denied.