[No. 4504.  Decided March 25, 1903.]

BEN E. SNIPES *et al., Appellants,* v. DANIEL KELLEHER, *as Administrator, et al., Respondents.*

LACHES — ENFORCEMENT OF TRUST.

An agreement whereby a mortgagee was to be permitted to foreclose without opposition on the understanding that he was to make a declaration of trust in the premises in favor of the mortgagor cannot be enforced by reason of the laches of plaintiff, where suit to enforce it was not brought until four months after the death of the alleged trustee, at a date more than seven years after such trustee had acquired title under the foreclosure, the only excuse for delay being that he had promised to execute a declaration of trust at various times, and had refused so to do at a period only three months prior to his death.

**EQUITY — ENFORCEMENT OF FRAUDULENT AGREEMENT.**

A court of equity will not lend its aid to declare a trust in favor of plaintiff where it appears that plaintiff, while insolvent, had entered into an agreement with the holder of a first mortgage on his lands, against which there were liens held by a second mortgagee and judgment creditors, that such first mortgagee should foreclose thereon and plaintiff would allow judgment to go by default, after which such mortgagee was to declare a trust in favor of plaintiff; and that the mortgage was foreclosed for the sum of nearly $17,000 in excess of the amount actually due, without the knowledge of other creditors, and the land sold and bid in for the amount of such excessive judgment.

Appeal from Superior Court, King County.—Hon. Boyd J. Tallman, Judge. Affirmed.

*Lewis, Hardin & Albertson, Fred Rice Rowell, William Welch* and *Walter B. Beals,* for appellants.

*Frederick Bausman,* for respondents.

The opinion of the court was delivered by

Mount, J.—Appellants denominate the complaint in this action "a bill to redeem." The prayer is for an accounting between the parties, and that the court determine the amount due defendants under a foreclosure sale by one J. W. Thompson during his life-time, and that upon the payment of the amount found due to defendants the court order certain property described in the complaint conveyed to the plaintiffs. A demurrer to the complaint was sustained. The plaintiffs elected to stand on the allegations thereof, and the cause was dismissed. Plaintiffs appeal.

The facts alleged in the complaint are substantially as follows: In January, 1892, plaintiff Ben E. Snipes and one J. W. Thompson entered into a contract by the terms of which Snipes was to purchase certain real estate in Seattle, and take title thereto in his own name, to be held

in trust for himself, D. B. May, and W. Lair Hill. This real estate was to be platted into town lots and sold. The purchase price of the real estate was $260,000, and taxes estimated at $23,000 additional. Thompson agreed to loan to Snipes $164,874 toward the purchase price of said land, and agreed that when Snipes received title thereto, a mortgage should be executed by Snipes and wife to Thompson to secure the repayment of this amount, with interest at six per cent. per annum. It was also agreed that a deed should be executed to Thompson for twenty of the lots. The mortgage was to be paid out of the net proceeds of the sale of the remainder of the lots, within two years. In accordance with this contract Snipes acquired title to the real estate, deeded the twenty lots named to Thompson and on January 30, 1892, executed a mortgage for the sum of $164,874, as agreed. Thereafter; in the year 1893, Snipes became insolvent, and thereupon executed to certain of his creditors, a second mortgage on the real estate in question. About the same time large judgments were also obtained against Snipes, which judgments became liens on the interest of Snipes in the said real estate. For these reasons Snipes could not sell the lots and make title thereto. He thereupon entered into an oral agreement with said Thompson to the effect that Thompson should proceed to foreclose his first mortgage—the one above named for $164,874—and obtain title to the property, so that the said Thompson could execute and deliver good and sufficient conveyances to those who might wish to purchase the said lands. Snipes agreed not to make any defense to the foreclosure suit, and Thompson agreed that, upon purchasing the property at foreclosure sale, he would execute a declaration of trust, in which it would be shown that Thompson held the property in trust for Snipes. In accor-

dance with this last agreement, in November, 1893, Thompson brought suit against Snipes and subsequent mortgagees and judgment creditors to foreclose his mort- gage. In his complaint he prayed for some $16,900 more than was due upon the mortgage, Snipes having paid this amount subsequent to the execution of the mortgage. Snipes made no defense to this action, and permitted the judgment to be taken for the full amount prayed. Judg- ment was entered on February 26, 1894, for $187,886.04, and on April 26, 1894, the property was sold to satisfy the same and was bid in by Thompson for the amount of the judgment. Thereafter, on August 9, 1895, a sheriff's deed was issued to the purchaser. It is alleged that, after Thompson acquired the title to the property, Snipes de- manded that he execute a declaration of trust; "that many times between January 1, 1895, and July 1, 1901, these demands were made upon Thompson by letters addressed to said Thompson by said Snipes;" that said Thompson promised at divers times between January 1, 1895, and July 1, 1901, that he would execute a declaration of trust; that these promises were made both orally and in writing, "first orally in 1895 and first in writing in 1895, and last orally in 1901 and last in writing in 1901;" but that the said Thompson postponed from time to time the perform- ance of said promises, and that he never in fact performed any of them, and that on or about March 1, 1901, the said Thompson refused to carry out his said promises; that said J. W. Thompson died on or about the first day of July, 1901, leaving surviving him as only heirs the de- fendants Flora Thompson, his widow, and Ross Thompson and Ida Thompson, children, now past age. The other defendant, Kelleher, is special administrator of the estate. It is also alleged that the value of the real estate in ques-

tion "is now and during all the times herein mentioned" was, more than $500,000; that, if plaintiff had not relied upon the promises of Thompson herein set out, he would have redeemed the property within one year from the time of sale.

We think the demurrer was properly sustained upon two grounds: (1) Upon the ground of laches, and (2) upon the ground that the complaint does not state a cause of action for which equity affords relief. Counsel for appellants seek to avoid the statute of limitations and the rule of laches by the allegation that the deceased, J. W. Thompson, during his life time, repeatedly promised to make a declaration of trust in writing, but that he postponed the performance of his promise from time to time, and thereby lulled the plaintiff Ben E. Snipes into the belief that he was secure, and was thereby excused from bringing an action to enforce his rights. If these were the only facts alleged, they would probably be sufficient to excuse the delay, under the rule in *Ryan v. Dox,* 34 N. Y. 307 (90 Am. Dec. 696), quoted and relied upon by plaintiffs. But when it is also alleged that the deceased, J. W. Thompson, on March 1, 1901, refused to carry out his promises, and when it further appears that in July (some four months later) Mr. Thompson died, and also that the action was not brought until October 14, 1901 (some three months after Thompson's death), we think under these circumstances, if the rule of laches may not be enforced, it is difficult to understand under what circumstances the rule may be invoked. An action to redeem under the statute was barred in one year after the sale. An action to enforce the oral agreement alleged was barred in two years. But, because of the promises of Thompson to execute the agreement, plaintiffs argue that the

action could be maintained at any time within two years after refusal. If there were no changed relations of the property or the parties, this argument would probably be correct. In this case the value of the property according to the complaint has not changed. But one of the parties to the oral agreement is dead. He possibly was the only party who knew the contract, if there was one, or who could contradict the evidence of the plaintiff upon the question of a contract. The plaintiffs delayed bringing this action more than six years while Thompson was living. After Thompson positively refused to make a declaration of trust, there was no further excuse for delay. Yet plaintiff neglected to bring his action for a period of four months before Thompson's death, and waited until three months thereafter before an action was begun against his heirs and legal representatives. Under these circumstances the plaintiff has been unreasonably dilatory in enforcing his rights, if he ever had any.

"Where a party has been unreasonably dilatory or negligent in enforcing his rights, and shows no excuse for such laches in asserting them, courts of equity uniformly decline to assist him in their enforcement." Wood, Limitation (3d ed.), p. 155, 137.

Appellant relies upon the case of *Ryan v. Dox, supra,* which is quoted at length in the brief. In that case the action was brought during the life time of the defendant, who was alleged to have made the contract. In this case, if Mr. Thompson, who is alleged to have made the contract, were living, we think the action would be in time under the rule there announced; but when the plaintiff has delayed more than six years, and until after the death of the other party to the oral contract, the rule of laches should be applied.

Furthermore, the demurrer was properly sustained be-

cause the complaint failed to state a cause of action against which equity will relieve. The complaint shows that at the time of the foreclosure of the mortgage Thompson was a first mortgagee; that Snipes was insolvent, and had given a second mortgage on the property to secure certain creditors, and also had judgment creditors whose judgments were liens on Snipes' interest in the real estate; that Thompson foreclosed his first mortgage at the request of Snipes, and prayed for $16,902.88 more than was actually due thereon; that Snipes suffered default, and allowed judgment to be entered for this sum in excess of the amount actually due. There is no allegation that the other creditors of Snipes were informed of this or knew anything about the judgment being excessive. The property was sold and bid in for the amount of the judgment. This was clearly a fraud upon the other creditors of Snipes, and deprived them of their right to protect their claims against Snipes to the extent of $16,902. These judgments and liens have, no doubt, expired, and cannot now be enforced, which probably affords some reason for the laches above discussed. According to his own allegation, the plaintiff invited and knowingly permitted a fraud to be practiced upon his creditors. For that reason alone he cannot come into a court of equity, and obtain its aid to enforce an agreement begotten in fraud to restore him to the property which, but for the fraud, he must have lost. 1 Pomeroy, Equity Jurisprudence (2d ed.), § 401; 2 Pomeroy, Equity Jurisprudence (2d ed.), §§ 916, 940; Greenhood, Public Policy, p. 169.

The judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY and ANDERS, JJ., concur.