LILLIAN H. GEST *vs.* GUION M. GEST ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 14th—decided August 1st, 1933.

*Daniel E. Ryan,* with whom was *Matthew H. Kenealy,* for the appellant (plaintiff).

*Raymond E. Hackett,* for the appellees (defendants).

HINMAN, J. The plaintiff, the named defendant, and the other defendant, Sylvia Gest, are wife, husband and daughter, respectively. This action was commenced as one in ejectment, the plaintiff alleging own-

ership of premises in Darien and wrongful possession thereof by the two defendants. The defendants each denied ownership in the plaintiff and alleged, in substance, that the premises were purchased by the defendant Guion M. Gest on or about June 27th, 1908, with moneys belonging to him, and title was placed in the plaintiff pursuant to an agreement between the plaintiff and him that he would be and continue to be the actual owner; that the premises were at all times to be considered and occupied as a home and domicil by and for the plaintiff and the defendants; that Guion M. Gest should pay all expenses and charges for maintenance, including taxes, interest, etc., and that the legal title would be conveyed by the plaintiff to him at any time upon request and that the premises were to be at all times available to him for use and possession; that thereafter and up to December 4th, 1931, the premises were used and occupied by all of the parties as a home, and Guion M. Gest paid all expenses for their maintenance and did all things required of him pursuant to the terms of the agreement; that the plaintiff is not now and never has been the actual owner of the property, but title thereto is held by her under an implied and resulting trust for the benefit of Guion M. Gest as the actual owner. The defendant Guion M. Gest, who will be hereafter referred to as the defendant, also filed a cross-complaint, making the allegations of his answer part thereof, alleging that on or about January 31st, 1932, the plaintiff attempted to exclude him from possession of the premises and violated the terms of the agreement pursuant to which title was placed in her name, and claiming a decree directing the plaintiff to convey the title to him or that title be otherwise vested in him. The plaintiff filed general denials to the special defenses and the cross-complaint.

· The parties stipulated that the issues be tried to a jury, the case was so tried and a verdict returned finding the issues for the defendants on both complaint and cross-complaint. The jury also answered and returned interrogatories, submitted to them, as follows: "(1) When the plaintiff received the deed to the property described in the complaint, did she become the owner of such property? Answer No. (2) When the plaintiff received the deed to the property described in the complaint, did she take the property to hold the same in trust for her husband, Guion M. Gest? Answer Yes." Thereafter the court entered judgment that the defendant is the equitable owner of the property in question and that the legal and record title thereto be and is vested in him.

The paramount issue framed by the pleadings was whether the property was the defendant's absolutely or was subject to a resulting trust in favor of the defendant. The finding shows that upon the evidence there was no dispute that the premises, which are residence property, were purchased by the defendant in 1908 for $16,000 paid by him but title was taken in the name of the plaintiff; that until December 4th, 1931, the premises were used and occupied by the plaintiff, the defendant, their daughter, and their son until his marriage, as a home, but on that date, as a result of a dispute regarding the discharge of a chauffeur, the plaintiff removed to a hotel in Stamford, the defendant remaining in possession. The plaintiff offered evidence that the premises were to be her property, that there was no agreement between her and the defendant that she was to hold title in trust for him, that she did not know that he intended that she should so hold it but believed at all times that the property belonged to her absolutely and treated it accordingly.

The defendant introduced evidence substantially in

accordance with the allegations of his special defense and cross-complaint as above set forth, and, in addition to other matters not of present importance, that it was his purpose and intention, in purchasing the property, to establish a home for himself and his family; that he was then and is now in the contracting business which he has carried on in his own name and in the conduct of which it was necessary for him to travel extensively and to be away from home for long periods of time; and that there was a considerable personal risk attached to the conduct of his business. The finding states further that the defendant offered evidence that he "placed the legal title to said premises in the name of the plaintiff for the purpose of building up for himself a personal estate separate and apart from his business estate. His purpose in doing this was for a matter of convenience only." The appellant seeks to have added to the finding as to the defendant's offers of proof, statements from her draft-finding that "his business was fraught with the usual risks among persons with whom he did business and he did not want this property subjected to unjustifiable claims and law suits;" also that the legal title was placed in the plaintiff for the purpose of putting the premises beyond the risks and liabilities that the defendant might incur in the conduct of his personal business enterprises.

The record shows that in explanation of his action in causing the title to be taken in his wife's name the defendant testified on direct examination: "My business was of a construction nature and it took me all over this country and Canada and even South America. It was fraught with risk and I did not want anything to happen to my family and I always considered it advisable to keep my affairs in such shape and my home so that they would be protected. I ran

my business as a going concern, as an individual, and never incorporated, and I had built up this estate, which I called my estate to everybody, and kept it separate from my business affairs." Being asked on cross-examination why such an estate could not have been built up in his own name he replied: "For the simple reason that any number of suits brought against a man are not justified. A man is liable to be attacked from any source and it is not a matter of good business prudence to lay yourself open when going from one end of the country to the other, to be attacked by anybody that pleases;" and later, "It was merely a question of building up an estate independent from my business. I had my business and I had my family, and I carried it on that way, quite independently. I created an estate for the benefit of my family." He also admitted that he believed that if he met with reverses the property would be beyond the reach of business debts, although claiming he would always make it available for them. Notwithstanding the limitations upon the correction of a finding in a jury case, in order that its function in testing the adequacy and accuracy of the charge may be served, the appellant is fairly entitled to have included in the finding a substantial statement of the defendant's evidence as to his purpose in placing title in the name of the plaintiff.

The plaintiff requested that there be submitted to the jury interrogatories (1) whether the defendant in arranging to have the property placed in the name of his wife did so with the intent to place it beyond the reach of creditors and the risks of business and (2) if it be found that there was a separate agreement between the plaintiff and the defendant that the plaintiff was to hold the property for the benefit of the defendant, was it the purpose of the agreement to place the title in such form as to be beyond the reach of creditors

of the defendant and beyond the risks of his business? The case as it went to trial involved demands for equitable relief. In such a situation the better practice is to submit to the jury the appropriate issues, the court, upon their findings, to grant the proper relief claimed. Answers to interrogatories as well as the verdict are appropriate to aid the court in rendering judgment. *Kornblau* v. *McDermant,* 90 Conn. 624, 638, 98 Atl. 587; *Roy* v. *Moore,* 85 Conn. 159, 168, 82 Atl. 333. The interrogatories which were submitted to the jury were adapted and perhaps sufficient to the issue of the existence of a resulting trust but, as we have seen, in the course of presentation of the defendant's case evidence had been introduced the effect of which might be to interject the element of fraudulent conveyance and to give rise to a question as to the defendant's right to equitable relief. The interrogatories proposed by the plaintiff not only definitely indicated her claim to the benefit of that obstacle but were adapted to test its existence. They might well have been submitted in substance, but in view of later conclusions we have no need to decide whether the failure to do so would, of itself, constitute reversible error. *Ford* v. *Dubiskie & Co., Inc.,* 105 Conn. 572, 582, 136 Atl. 560.

The only reference which the trial court made in the charge to the matter of fraudulent conveyance was the following: "It is claimed by the plaintiff that the defendant Guion M. Gest placed this property in his wife's name that he might at times escape the demands of creditors. Be the reasons for his doing this what they may, the ultimate question for the jury to decide is whether Guion M. Gest caused this property to be in his wife's name as a gift from him, or as a resulting trust, she being the trustee for him, the actual owner." Error is assigned as to this, and in failing to charge

as to the effect of a finding by the jury that the defendant placed the property in the name of the plaintiff for the purpose of fraudulently putting it beyond the risks of his business and the reach of his creditors.

Frequent and familiar illustration of the application of the maxim, "He who comes into equity must come with clean hands," is found in those cases where a claim is tainted by fraud of the claimant. If his claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have. If a contract has been entered into through fraud or to accomplish a fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties, set it aside, and thus restore to the plaintiff the property which he has fraudulently transferred. Equity will leave such parties in the position in which they have placed themselves, refusing affirmative aid to either of them. The only equitable remedies which they can obtain are purely defensive. "One of the most common occasions for the enforcement of this rule arises in cases where a debtor has conveyed or assigned or in any manner transferred his property for the purpose of defrauding his creditors, and afterward seeks to set aside the transfer as against the grantee or assignee and recover back the property. The door of a court of equity is always shut against such a claimant." 1 Pomeroy's Equity Jurisprudence (4th Ed.) p. 745, § 401, and note, p. 747; *Brown* v. *Brown,* 66 Conn. 493, 34 Atl. 490; *Barnes* v. *Starr,* 64 Conn. 136, 28 Atl. 980; *Gaylord* v. *Couch,* 5 Day, 223; *Snipes* v. *Kelleher,* 31 Wash. 386, 72 Pac. 67; *Dent* v. *Ferguson,* 132 U. S. 50, 64, 10 Sup Ct. 13; *Carson* v. *Beliles,* 121 Ky. 294, 300, 89 S. W. 208; 1 L. R. A. (N. S.) 1007; *Dunaway* v. *Robertson,* 95 Ill. 419, 426; *Kassing* v.

*Durand,* 41 Ill. App. 93, 106; *Wertheimer-Swartz Shoe Co.* v. *Wyble,* 261 Mo. 675, 687, 170 S. W. 1128; *Baird* v. *Howison,* 154 Ala. 359, 365, 45 So. 668; *Hassam* v. *Barrett,* 115 Mass. 256, 258; 4 A. L. R. p. 101 note. "If the title to property is taken in the name of a third party for the purpose of defrauding the creditor of the party who pays the purchase-money, equity will not assist him in enforcing the resulting trust, for to do so would be to aid fraud." Bispham's Principles of Equity (11th Ed.) § 60.

In *Gaylord* v. *Couch* (1811) *supra,* Couch being indebted to Tibballs conveyed land to him and took a bond for reconveyance when the debt should be paid. Later the bond was delivered by Couch to Tibballs in fraud of creditors but with an agreement for return of the bond to Couch when certain claims had been adjusted. In this action by Couch against Tibballs' administrators seeking a reconveyance of the land, it was held (p. 228) that the statute against fraudulent conveyances (now General Statutes, § 5984) "by declaring the agreement of the bond to be good, as between the parties, virtually declares the agreement creating the trust to be void. The law leaves the parties where it finds them. A contract which has been executed, cannot be defeated, while that which is executory merely, cannot be enforced. The argument totally subverts the meaning of the statute, which goes upon the ground of enforcing the secret trust, as to creditors, by giving them the full benefit of it; but, as between the parties, the law considers the conveyance as good and valid; and renders void any agreement which is inconsistent with what such transfer appears to be, upon the face of it."

In *Nichols* v. *McCarthy,* 53 Conn. 299, 324, 23 Atl. 93, it was recognized as "a well settled rule that where a debtor understandingly and deliberately conveys

away his property to defraud or hinder his creditors, a court of equity will not lend him its aid to recover the property back." *Barnes* v. *Starr, supra,* was a suit for cancellation of an ante-nuptial contract entered into between the plaintiff and the defendant's testator for the purpose of deceiving the heirs of the latter, and it was held that where the contract or other act is substantially a fraud upon third parties relief is refused to a party thereto on the ground that he does not come into court with clean hands (p. 155, citing numerous cases). *Brown* v. *Brown, supra,* was an action brought by one brother against another to establish an interest in certain real estate conveyed by their mother to the defendant under a secret verbal trust agreement between the brothers, the purpose of which was to defeat or reduce an allowance to the divorced wife of the plaintiff for support of herself and children. The rule applied in *Barnes* v. *Starr* was again resorted to and judgment for the defendants sustained. "Whenever a party who, as actor, seeks to set the judicial machinery in motion to obtain some relief, has himself violated conscience or good faith in his prior conduct with the matter of the controversy, then the door of the court will be shut against him; the court will refuse to interfere in his behalf, to acknowledge his right, or award him any remedy" (p. 499).

*Bouton* v. *Beers,* 78 Conn. 414, 62 Atl. 619, is not inconsistent with that rule. The plaintiff therein did not seek to effectuate a resulting trust in respect to property given to the defendant with intent to defraud the plaintiff's creditors, but to compel defendant to perform an agreement to reconvey which was expressed in the deed. The court held to be demurrable a defense that the conveyance was made for the purpose of preventing the plaintiff's wife from attaching the property in case she brought divorce proceedings, on

the principle that where one party to a contract seeks to enforce the precise written agreement, the other will not be permitted to interpose and rely upon a fraudulent plan or purpose in order to escape the obligation of his contract. See also *Nichols* v. *McCarthy, supra.* The rule so applied is distinct from and consistent with the principle that where a fraudulent purpose is an element of the situation upon which a plaintiff relies to secure the remedy he seeks, participation in fraud disqualifies from a resort to equity to establish a different contract from that which the parties have expressed. We are dealing here with a situation of the latter kind, where a claimed infirmity develops in the affirmative case instead of through interposition of fraud as a defensive measure.

*Lieb* v. *Griffin* (N. J. Eq.) 147 Atl. 634, 635, was an action to establish a resulting trust with respect to premises purchased and paid for by Henry C. Griffin but title taken in the name of a son. The Court of Chancery found that the conveyance was made with the intent of a trust for the wife and all the children of Griffin, but also with the intent on his part to put the property out of the reach of business creditors. The evidence on the latter point was to the effect that Griffin had declared an intention to put the property in his son's name as a home for the family, protected from the hazards of his business. It was held that "by the complainants' own showing . . . the conveyance was made by the father with intent to hinder and defraud possible future creditors. In such a case it is well established that equity will not decree a reconveyance either to the grantor or the grantor's heirs, even though no creditors have in fact been affected." In *Dunaway* v. *Robertson, supra,* a bill in chancery, filed for the purpose of setting aside deeds which the complainant had executed to his father, alleged that he

made out the deeds "fearing he might in the then future become involved in litigation which, because of its tediousness and expensiveness, would probably embarrass him, but not for the purpose of avoiding the payment of any debt or obligation, legal or equitable, due from him or previously contracted by him." Demurrer was sustained on the ground that the averment that the deeds were not made for the purpose of avoiding the payment of any debt or obligation was but the statement of a conclusion and did not relieve the conveyances of the fraudulent character attributable to them from the statement that they were made under an apprehension of embarrassment from anticipated litigation. It was held in *Higginbotham* v. *Boggs,* 234 Fed. 253, 256, that "a resulting trust will not be declared in favor of a purchaser who had the legal title made to another for the purpose of defrauding his creditors." In *Beers* v. *Botsford,* 13 Conn. 146, 153, it was indicated that a conveyance of land to third parties made to protect it against apprehended demands arising out of a speculation may be held to be fraudulent.

The question of the presence of fraud in the transaction was an open one for determination by the jury under proper instructions and should have been so submitted to them. The effect of the charge as given was to dismiss the intent and purpose of the defendant, in the transaction, as immaterial, although this element of the case might well be decisive, particularly as to the right of the defendant to the remedy demanded under his cross-complaint and which, as a result of the verdict, he was granted by the judgment rendered.

The application of the clean-hands maxim does not depend upon an averment in pleadings or the claims of the parties; it may and should be applied by the court

of its own volition when a situation calling for it is disclosed on the trial by evidence or otherwise. *Dunham* v. *Presby,* 120 Mass. 285, 289; *Teoli* v. *Nardolillo,* 23 R. I. 87, 93, 49 Atl. 489; *Bentley* v. *Tibbals,* 223 Fed. 247, 252; *Creamer* v. *Bivert,* 214 Mo. 473, 485, 113 S. W. 1118; 21 C. J. p. 186.

Although the generally applicable presumption, tending to a resulting trust, of an intention that a purchase will inure to him who furnishes the purchase price, and the further principle, amounting to an exception to that general rule, that when a man buys property and has it conveyed to his wife the presumption, until the contrary appears, is that a gift is intended (*Fox* v. *Shanley,* 94 Conn. 350, 357, 109 Atl. 249), were both stated in the course of the charge, they were so separated and the general rule so applied by context to the claimed relevant facts of the case as to render it likely that the exception, mentioned considerably earlier, would be lost sight of by the jury.

There is error and a new trial is ordered.

In this opinion the other judges concurred.