PARIDE TEOLI *vs.* HENRY NARDOLILLO *et al.*

| 23 | 87 |
|----|----|
| d24 | 74 |

PROVIDENCE—JUNE 8, 1901.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Equity. Master's Reports. Objections. Exceptions.*

Gen. Laws cap. 240, § 21, provides that the Appellate Division may send the pleadings and any issues in any cause to a master, who, under the direction or rules, general or special, of the Appellate Division, shall hear and report the evidence and his rulings and findings ; and if such rulings and findings be not specifically excepted to within thirty days after the opening of said report, they shall be conclusive on all parties.

Equity rule 38 provides that the master shall submit the draft of his report to the parties, and appoint a time and place for hearing such objections thereto as they may think fit to suggest, and, after considering such objections, shall finally make up his report and file same in court. The parties shall have one month from the time of filing the report to file exceptions thereto, and if no exceptions are filed by either party within that period, the report will be confirmed :—

*Held,* that the statute did not supplant the equity rule, but was to be taken in connection with said rule, which requires all objections to the master's report to be taken before him. Where objections were not taken before the master, exceptions subsequently filed within thirty days after the opening of the report would not be considered.

(2) *Equity. Accounting. Master's Reports. Illegal Transactions.*

Where it appears from the report of a master and the evidence submitted therewith that a part of the partnership business was illegal, the court will refuse to confirm the report upon objection showing such illegality, although no objections or exceptions had been taken thereto according to law, since equity will refuse to lend assistance to the enforcement of an illegal contract where both parties have participated in the illegality. Such defence can be interposed at any stage of a cause, regardless of the technical condition of the pleadings.

The report may, however, be recommitted to the master to enable the plaintiff to show the state of the partnership accounts as to the transactions not tainted with illegality.

BILL IN EQUITY for an accounting. Heard on exceptions to report of master. Exceptions sustained.

TILLINGHAST, J. This is a bill in equity for a copartnership accounting, and for other relief.

The bill sets out that the copartnership was formed for the purpose of buying, bottling, and selling intoxicating liquors in this State, and that the profits of the business were to be shared equally by the three partners. By agreement of parties the case was referred to Herbert Almy, Esq., one of the standing masters in chancery of this court, to take an account of all partnership transactions, as prayed in the bill. This has been done, and the master has duly filed his report thereon, and the case is now before us on alleged exceptions to said report. No objections were taken before the master, however, although his report shows that a draft thereof was duly submitted to the attorneys of the respective parties, as provided in equity rule No. 38—a copy of which may be found in a foot-note hereto—and hence the question is raised whether the defendants can now insist on any of the errors alleged. They claim that, as they filed the exceptions in this court within thirty days after the opening of the master's report, as required by Gen. Laws R. I. cap. 240, § 21, the case is prop-

erly before us on the exceptions.   We do not agree to this contention.   Said section 21 provides, amongst other things, that "The appellate division may, on motion of any party, hear any cause or proceeding in whole or in part on oral testimony, or it may send the pleadings and any issues therein (to be heard on oral testimony) to a master who, under the direction or rules, general or special, of the appellate division, shall hear and report to the appellate division the evidence and his rulings in such suit or proceeding and his findings on such evidence ; and if such rulings or findings be not specifically excepted to within thirty days after the opening of said report (of which opening the clerk of said division shall at once notify in writing all parties or their attorneys of record), they shall be conclusive on all parties, excepting that for cause shown the time may be extended on motion filed within said thirty days."   It is to be observed that under this statute the case goes to the master "under the direction or rules, general or special, of the appellate division."   The statute, therefore, does not supplant the equity rule aforesaid, as supposed by defendant's counsel, but is to be taken in connection with said rule, which requires that all objections to the master's report shall be taken before him.   The purpose of this rule is very evident.   The master sits as a court in the hearing of the case.   He then prepares a draft report of his findings and submits the same to the respective counsel, in order that they may point out any error of law or fact into which he may have fallen, so that the same may be corrected ; and also in order that disputed questions of law may be regularly presented by the record for the consideration of the court to which the report is made.   If, after hearing and considering such objections as shall be made to the draft report, the master modifies his report in any way, he is of course required by virtue of said rule, as properly interpreted, to notify the parties of such modification, so that they may know specifically what his final report is to be before it is filed in court, and may thus be able to preserve all of their rights relative to making objections thereto as the basis of exceptions to be subsequently filed in court.   But it would be

an idle ceremony to require the master to thus prepare and submit to the parties a draft report of his findings, in order that they might formally object thereto, if they could as well make their objections to the court after his final report has been filed. Of course we do not question the *power* of the court to permit exceptions to be taken thus irregularly. And in case of accident or surprise it is sometimes done. But under the well-settled practice of this court, as well as the very uniform practice of equity courts generally, the rule is very strictly adhered to of not permitting exceptions to be filed when there have been no previous objections taken. 2 Dan. Ch. No. 1,312.

We therefore decide that the defendant's exceptions are not properly before us, and decline to consider them.

(2) But the defendants urge that even if they cannot avail themselves of the exceptions now filed, by reason of their failure to comply with the rule aforesaid, they are nevertheless entitled to object to and protest against the confirmation of the master's report on the ground that it appears by said report and the evidence submitted therewith that said partnership was an illegal one, having been formed to carry on business—in part at any rate—in violation of law, and that the main part of the business actually carried on by said copartnership was an illegal business, and hence that this court will not lend its aid in the settlement between parties thereto of their illegitimate gains.

The evidence shows that the place of business of the copartnership in question was at No. 26 Miller avenue, formerly in the town of Johnston, but now in the recently annexed district of the city of Providence, for which place of business the company held a wholesale liquor license from said town of Johnston. The master finds that it was the custom of the partners for the complainant to take liquors on one team and peddle them out to customers on the road, while the respondent Nardolillo took another team and route for the same purpose, and that the respondent Cipolla stayed in the store and was supposed to keep the books of the firm. The uncontradicted evidence shows that the main purpose and busi-

ness of the partnership was to peddle intoxicating liquors from door to door and from house to house very much in the same manner as ordinary fruit and vegetable peddlers dispose of their goods. It also shows that they had more or less regular customers upon whom they depended for sales, and that they were constantly obtaining new customers in different towns and localities in the State, thus rapidly building up and extending their business.

The following brief abstract from the testimony of the plaintiff is pertinent in this connection: "Q. What was the purpose of the partnership?" "A. Lager, ale and soda, to be sold out of team. Place of business was 26 Miller avenue, Johnston." "I had a route with a team and sell the liquor and return money to partnership. I collected the money a little at a time. My book shows from whom I collected the money. I loaded the team with beer and any kind of stuff they needed. I went to Nayatt Point, Simmonsville, Thornton, and other places. I worked sometimes fifteen hours a day. Business grew the first month, and the second month business was larger than the first, and six months' sales were larger than any. This book shows all liquor sold by me during partnership. My book and his book differed, and I found fault. I found fault that if I went out with ten kegs and sold five kegs and returned five I would not find the five kegs returned, on this book. This book shows what stuff I sold and the money I took in, but does not show what I returned. Nardolillo had two teams. He took the Charles street district. He had two wagons, and sometimes they hired another. He claimed he always had a good business, and that it was increasing."

In view of the facts thus appearing, the question arises whether the court will confirm the master's report and thereby enable the plaintiff to recover from the defendants the amount to which the master finds that he is entitled under the accounting, to wit, the sum of $578.52. We think it is clear that it should not. It is laid down as a general rule in Bates on Partnership, vol. 1, § 119, that "A bill for an accounting and settlement of the partnership transactions of

an illegal partnership or of the illegal gains of a legal partnership, will not be sustained either for the purpose of obtaining a division of the profits or contribution for losses and expenses, for the taking of the account involves a dealing with, and hence a recognition of, the illegal acts; but the court will dismiss the bill and leave the parties where it finds them." This statement of the law is well supported by the authorities. See cases cited in note, and also *Watson* v. *Murray*, 23 N. J. Eq. 257, and *Watson* v. *Fletcher*, 7 Gratt. 1.

The following references to Gen. Laws R. I. cap. 102, regulating the keeping and sale of intoxicating liquors, clearly show that the main business carried on by said copartnership in manner aforesaid was illegal. Section 1 provides that "No person shall at any time manufacture or sell, or suffer to be manufactured or sold, except for the purpose of exportation . . . any ale, wine, rum or other strong or malt liquors, . . . unless as hereinafter provided." And in looking through the remaining sections of said chapter, together with the amendments thereof, we nowhere find any warrant or authority for a person to peddle liquor in teams, or otherwise, as was done by the parties in this case. On the contrary, the *place* for which the license is granted is strongly emphasized; and it is perfectly evident that both the letter and spirit of said chapter require that all sales of liquor shall be limited to the place for which the license is granted.

Section 6 of said chapter sets forth the privileges of a licensee under a wholesale license, and provides as follows: "The fees for licenses shall be as follows: 1. For a license to manufacture or sell at wholesale and retail, not to be drunk on the premises, pure spirituous, intoxicating and malt liquors not less than $500 nor more than $1,000. . . ." And "a license to manufacture pure liquors shall carry with it the right of sale at wholesale at his manufactory by the manufacturer of all pure liquors manufactured by him." It will thus be seen that the language of this section does not permit a sale to be made anywhere off of the premises, but merely provides that the liquor sold is not to be drunk on the premises. And evidently the sale must be made on the premises.

That said chapter contemplates that the sales of liquor provided for therein shall be confined to a particular place may also be seen from the provisions of section 2, namely, that "Before granting license . . . said council or board shall give notice . . . in some newspaper published in the city or town where the applicant proposes to carry on business . . . of the name of the applicant for said license, and the *particular location for which the license is requested* . . . and no license shall be granted under this chapter to authorize the sale of any such liquors *at any building or place* where the owners or occupants of the greater part of the land within two hundred feet of such *building or place* shall file . . . their objection to the granting of such license."

Sections 5, 10, and 11 also make it clear that the right of the licensee to sell is strictly limited to the "*place licensed*." It is therefore clear that the license which was held by said firm did not authorize them to sell intoxicating liquors at any other place than that particularly specified therein, and hence that the business carried on by them in the manner above described was in plain violation of the law of the State. See *Liquors of Young*, 15 R. I. 243.

To confirm the master's report in view of the facts which are therein made to appear, taken in connection with those which appear in the statement of the evidence taken by him, therefore, would be for the court to virtually approve and sanction such violation of the law, which no court, either of law or equity, will ever do, it being a familiar maxim that the law refuses its assistance to either party to an illegal contract where both have participated in the illegality. *Snell* v. *Dwight*, 120 Mass. 9 ; *Chambers* v. *Church*, 14 R. I. 398. In other words, where both parties are equally in the wrong, and neither can show the right to relief or redress without also showing his own illegal conduct, the law does not look to the relative rights of the parties growing out of such illegal transactions, but simply leaves them where it finds them. As bearing upon the same general question, see *Whelden* v. *Chappel*, 8 R. I. 230 ; *Smith* v. *Rollins*, 11 R. I. 464 ; *Chafee* v.

*Sprague Mfg. Co.*, 14 R. I. 168 ; *Gorman* v. *Keough*, 22 R. I. 48 ; *Shuster* v. *State*, 62 N. J. Law, 521.

The following language of Lord Mansfield in the celebrated case of *Holman* v. *Johnson*, 1 Cowp. 341, which is quoted in *Sullivan* v. *Horgan*, 17 R. I. 109, is so pertinent in this connection that we repeat it here. He says : " The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this : *ex dolo malo non oritur actio.* No court will lend its aid to a man, who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating *or otherwise,* the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes ; not for the sake of the defendant but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have advantage of it ; for where both are equally in fault, *potior est conditio defendentis.*"

As to the plaintiff's contention that as the defence now set up was not incorporated in the answer it is now too late to interpose it, we reply that if at any stage of a cause in equity it is made to appear that it is based upon an illegal transaction, and that the court cannot grant the final relief prayed for except by means of self-stultification, it will dismiss the suit regardless of the technical condition of the pleadings ; for, as said by Stiness, C. J., in the recent case of *Whipple* v. *Guile*, 22 R. I. 577, " it would be idle to compel parties to go to an end which the court could not embody in a judgment."

We will say in this connection, however, that as the evidence shows that the partnership business was carried on at

the place for which the license was granted, as well as in the manner before stated, the plaintiff should be allowed, if he desires, to have the case recommitted to the master, so that he may show, if he can, the state of the partnership accounts as to such transactions.

In what we have said concerning the master's report we do not wish to be understood as in any manner reflecting upon the technical correctness thereof, or upon the manner in which he discharged his duties.   He very properly reported the facts as he found them, and in view of the pleadings he was not called upon to pass upon the questions of law which are now raised.   But, for the reasons given in the foregoing opinion, we must decline to confirm said report.

*John E. Conley*, for plaintiff.

*Page & Page and Cushing*, for defendant.

NOTE.—The master, as soon as his report is ready, shall submit the draft of the same to the parties or their solicitors, and appoint a time and place for hearing such objections thereto as they may think fit to suggest; and after noting and considering such objections, shall finally make up his report and file the same in court.   The parties shall have one month from the time of filing the report to file exceptions thereto; and if no exceptions are filed by either party within that period, the report will be confirmed.