[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 5, 1996
I. The Issue
May a party enlist the civil contempt powers of this court to enforce one order of a dissolution judgment when the petitioner has been in willful contempt of other orders entered as part of the same judgment?
II. The Facts
The plaintiff, Linda O. Kramer, commenced a dissolution of marriage action against the defendant, Paul D. Kramer, in 1983. The court, (Lewis, J.) by memorandum of decision dated December 26, 1984 dissolved the marriage by judgment that included the following orders: (1) the defendant was to pay the plaintiff CT Page 5504 unallocated alimony and support in the amount of $3,500 per month until October 15, 1985, after which the defendant was to pay $3,000 per month alimony until the plaintiff's remarriage, death or December 31, 1994; (2) the plaintiff was to repay $38,050 to a trust account set up for the benefit of the children within one year from the date of the judgment; (3) the plaintiff was to transfer title to a Jaguar owned by the parties to the defendant; (4) the plaintiff was to transfer ownership of certain life insurance policies to the defendant; (5) personal property was to be equitably distributed; and (6) the plaintiff was awarded the marital home.
The defendant moved to reargue and as a result, the court issued a second order on September 25, 1985. Both parties (1) were appointed cotrustees of a new trust account that was primarily to fund the children's education; (2) the plaintiff was to pay $38,050 into the trust by December 26, 1985; (3) the $23,544 remaining in the old trust was to be transferred to the new trust.
On May 12, 1986, the court issued another order which provided that the plaintiff was to transfer title of the Jaguar to the defendant and the plaintiff was to transfer ownership of certain life insurance policies to the defendant. Additionally, the court approved the trust agreement prepared by the defendant's counsel and ordered the plaintiff to execute the agreement within two weeks.
The defendant placed a telephone call to the plaintiff in June of 1986 and asked her why he should continue his obligations under the judgment when she did nothing to meet her obligations. The plaintiff replied that she did not care what he did, that she was sick of him, the lawyers and the judge, asking the defendant not to bother her anymore. In 1986 the defendant attempted to serve a motion for contempt on the plaintiff but she evaded service.
Both the daughter and son of the Kramers attended college. Nina completed college and David attended for two years. The defendant paid most of Nina's educational expenses and all of David's. The plaintiff never paid the trust and never complied with any of the 1986 court orders except for transferring title to the Jaguar.
The June 16, 1993 motion for contempt was served on the CT Page 5505 defendant, which was amended on January 11, 1996, seeking $316,500 in back alimony, interest, and $40,000 in attorneys fees. The defendant filed five special defenses in response to the motion for contempt claiming (1) laches; (2) equitable estoppel; (3) waiver; (4) unclean hands; and (5) financial inability to comply with the relief sought.
III. Equitable Maxim of "Clean Hands"
The courts of this state have analyzed the maxim in a number of cases and that analysis has been in the context of a special defense. See DeCecco v. Beach, 174 Conn. 29, 34, 381 A.2d 543
(1977), Lyman v. Lyman, 90 Conn. 399, 406, 97 A.2d 312 (1916). "Estoppel, waiver, unjust enrichment and unclean hands are all defenses[.]" New York Annual Conference v. Fisher, 182 Conn. 272,300, 438 A.2d 62 (1980).
"It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with `clean hands' . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice . . ." Pappas v. Pappas, 164 Conn. 242, 245-46 (citations omitted).
The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in willful misconduct in regard to the matter in litigation. DeCecco v.Beach, supra, 35. "Under this maxim, any wilful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair minded men, will be sufficient to make the hands of the applicant unclean." Boretz v. Segar,124 Conn. 320, 324, 199 A.2d 548 (1938). See also Lyman v. Lyman,supra, 90 Conn. 406.
"The application of the clean-hands maxim does not depend upon an averment in pleadings or the claims of the parties; it may and should be applied by the court of its own volition when a situation calling for it is disclosed on the trial by evidence or otherwise. Dunham v. Presby, 120 Mass. 285, 289; Teoli v.Nardolillo, 23 R.I. 87, 93, 49 A. 489; Bentley v. Tibbals,
223 F. 247, 252; Creamer v. Bivert, 214 Mo. 473, 485,113 S.W. 1118; 21 C.J. p. 186." Gest v. Gest, 117 Conn. 289, 300-01, CT Page 5506167 A. 909 (1933). Failing to pay funds to the trust account as ordered by the court was willful misconduct. The equitable maxim should be applied and will be applied in this case.
The defendant undertook the educational expenses of the two children, a burden the trust was to bear. This court finds such undertaking flowed from the plaintiff's failure to obey the court's orders.
IV. Conclusion
To allow the plaintiff to pursue collection of her claims of unpaid alimony via the contempt process is to permit the integrity of the court and its judgment to be compromised. There may be alternate routes to settlement of the parties' accounts, but the plaintiff will not be permitted to cite the defendant for civil contempt under the circumstances.
The plaintiff's motion is denied.
HARRIGAN, J.