[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON AWARD OF ATTORNEY'S FEES UNDER CUTPA
Pursuant to Section 42-110(g)(d) of the statutes the plaintiff has moved for counsel fees. Plaintiff's counsel has submitted time records indicating he spent 332.6 hours on the case and that he billed at the rate of $150. per hour. Multiplying hours spent by the billing rate the claim for attorney's fees is in the amount of $49,880. The defendant does not question the amount of hours plaintiff's counsel claims to have worked on the case as a whole nor does he question the appropriateness of the $150. hourly rate. The defendant did not object to the admission of the billing records nor did he argue, for example, that expert testimony was required to determine the value of reasonable attorney's fees, Barco Auto Leasing Corp. v.House, 202 Conn. 106, 120-121 (1987). The court accepts counsel's representations, as reflected in the billing records submitted, concerning the time he spent representing the plaintiffs from the time the case first came to his office. Also the hourly rate of $150 is certainly reasonable given plaintiff's counsel's length of practice, litigation experience, and obvious skills displayed by his motion practice and handling of the trial and post trial motions.
The defendant does, however, oppose the motion for attorney's fees. First he argues that the plaintiffs are not entitled to recover any monies for such fees. Then he argues that even if the court concludes an award is justified, the amount of any award for attorney's fees should be substantially less than the amount demanded by the plaintiffs. The court will try to address each of the two positions taken by the defendant.
 (1) CT Page 10739
Merely because the jury awarded relief under CUTPA that does not mean the plaintiffs are entitled to receive attorney's fees. The language of § 42-110(g)(d) explicitly states that in a CUTPA action: "the court may award to the plaintiff, in addition to the relief provided in this section . . . reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery." As the court said in Staehle v.Michael's Garage Inc., 35 Conn. App. 455, 459 (1994): "The language of the statute is clear and unambiguous: the awarding of attorney's fees is within the discretion of the trial court", cfGargano v. Heyman, 203 Conn. 616, 622 (1987).
First the defendant argues that this was not the type of case the legislature had in mind when it provided for attorney's fees under CUTPA: "This was not a private attorneys general case brought to expose and correct a deceptive trade practice with the possibility of attorney's fees as an inducement to taking a case involving a small amount of money. Contingent fees (as well as a $10,000. retainer) were the inducement for" plaintiff's counsel to take the case. (p 4 of 4/8/99 brief). It is difficult to understand the thrust of this argument. True some CUTPA cases may involve long hours of work without the prospect of great remuneration so liberal attorney fee provisions must be provided for to encourage litigants to act as private attorney's general,Gill v. Petrazzuoli Bros Inc., 10 Conn. App. 22, 33 (1987). But the gravamen of CUTPA is the policy to police market places for fraud and deceptive practices. That was the claim in this case and there was no sure prospect of recovery so the remedial purposes of CUTPA would be advanced by an award of attorney's fees in this case. In the leading federal case of Johnson v.Georgia Highway Express Inc., 488 F.2d 714 (CA5, 1974) the court did say "In no event, however, should the litigant be awarded a fee greater than he (sic) is contractually bound to pay, if indeed the attorneys have contracted as to amount," id page 718," id page 718. But the $10000 figure of this retainer agreement was not even a ceiling but was tied in with a contingency fee arrangement. And it has been said that there is "no case law to establish that a contingency agreement precludes or limits an award of attorney's fees . . . under CUTPA. In fact Connecticut law is to the contrary. The existence of contingency fee arrangements made no difference in the award of attorney's fees under CUTPA,"Boulevard Associates v. Sovereign Hotels Inc., 868 F. Sup. 70, 73
(SDNY, 1994).
The defendant then argues that the plaintiff's own conduct CT Page 10740 has created a major obstacle to any equitable consideration in their favor such as the award of attorney's fees. The defendant alludes to the fact that the plaintiffs submitted a fraudulent "contract", misstating the sales price, to the Liquor Control Commission. They thought this would help get them a liquor permit. They also submitted false affidavits under oath as to the amount of deposit they put up. The defendant cites Gest v. Gest,117 Conn. 289, 296 (1933) for the proposition that a person claiming equitable rights must come into court with clean hands the "unclean hands" doctrine prevents the granting of relief which is equitable in nature.
This case is not an appropriate one for the application of the unclean hands doctrine as a defense to the request for the award of attorney's fees. Our state accepts the "narrow formula" of this doctrine as set forth in Dobbs, Law of Remedies, Vol. 1, § 2.4(2). Thus in Yale Gas Co. v. Wilcox, 64 Conn. 101, 128
(1894), the court said:
 "Though an obligation be indirectly connected with an illegal transaction, it will not thereby be barred from enforcement if the plaintiff does not require the aid of the illegal transaction to make out his (sic) case",
cf Samasko v. Davis, 135 Conn. 377, 383 (1949).
In Gest v. Gest, 117 Conn. 289, 296 (1933) the court said if a claim "grows out of or depends upon or is inseparably connected with (that party's) own prior fraud, a court of equity will, in general, deny (the party) any relief, and will leave (the party) to whatever defenses at law (the party) might have", also seeForestiere v. Doyle, 30 Conn. Sup. 284, 286 (1973), cf AnauvinInternational Ltd v. Goldwitz, 927 F. Sup. 40 (D. Conn. 1996). For the doctrine to apply then there must be a direct nexus between the misconduct and the right which is sought to be enforced. Here Seiden was well aware of the plaintiffs actions — for the agreement to go through the Liquor Control Commission had to approve the Kays purchase and operation of the store they hoped to buy. The plaintiffs, if they misled anyone, misled the Commission and they may have to deal with the consequences of that but any wrongdoing on their part has nothing to do with explaining away or mitigating the deceptive acts of Seiden which the jury found to be the cause of injury to the plaintiffs. The CT Page 10741 State or one of its subdivisions is after all not being asked for the attorney's fees but one of the parties who at least indirectly might have benefitted [benefited] from any misrepresentations the Kays made. The Kays claim against Seiden does not grow out of depend nor is it inseparably bound with any fraud they might have committed in their dealings with the Liquor Control Commission. The court concludes that this is not a case where as a matter of law or in the exercise of discretion attorney's fees should not be awarded.[1]
 (2)
The question still remains as to the amount of any attorney's fees that should be awarded and what standard the court should use in determining that amount. In Steiger v. J.S. Builders Inc.,39 Conn. App. 32 (1995) the court relied on the case of Johnsonv. Georgia Highway Express Inc., 488 F.2d 714 (CA5, 1974) and the guidelines set forth in that case: "The guidelines set forth in Johnson for calculating reasonable attorney's fees are appropriate in CUTPA litigation because, similar to Title VII `CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair and deceptive trade practices or acts', "id page 38. The twelve guidelines set out in Johnson are as follows: (1) the time and labor required (2) the novelty and difficulty of the questions (3) the skill requisite to perform the legal services properly (4) the preclusion of other employment by the attorney due to acceptance of the case (5) the customary fee for similar work in the community (6) whether the fee is fixed or contingent (7) time limitations imposed by the client or circumstances (8) the amount involved and the results obtained (9) the experience, reputation and ability of the attorneys (10) the "undesirability" of the case (11) the nature and length of the professional relationship with the client (12) awards in similar cases, Johnson at 488 F.2d pp 717-719, Steiger
at 39 Conn. App. page 38.
The procedure followed in the federal courts as to the award of attorney's fees in Clayton Act and civil rights litigation is instructive. First a so-called "lodestar" figure is arrived at — the amount of time spent by the hourly rate or fee. Justice Scalia in City of Burlington v. Dague, 505 U.S. 557, 562 (1992) said: "The `lodestar' figure has, as its name suggests, become the guiding light of our fee shifting jurisprudence. We have established a `strong presumption' that the lodestar represents the `reasonable fee'. . . . and have placed upon the fee CT Page 10742 applicant who seeks more than that the burden of showing that `such an adjustment is necessary to the determination of a reasonable fee!!! (emphasis added), cf Pennsylvania v. DelawareValley Citizen's Council, 478 U.S. 546, 565 (1986). In U.S.Football League v. National Football League 887 F.2d 408, 415
(CA2, 1989) the Second Circuit commenting on Johnson and its guidelines suggested that the Johnson guidelines can be used "in adjusting a lodestar figure". The court went on to say at 887 F.2d page 415: "As the Supreme Court noted in Hensley, in adjusting a fee upward or downward, a `district court . . . may consider . . . factors identified in Johnson . . . though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended, at a reasonable hourly rate. Hensley 461 US at 434 n. 9 . . ." (U.S. Football League v. NFL, supra is a Clayton Act case, the model act for statutes like CUTPA).
What is the appropriate "lodestar" or base figure that should be first considered prior to the application of the Johnson guidelines? Should it in fact be the $49,880 figure which represents total time spent on the case of 332.6 hours at $150. per hour? One factor which has been appropriately raised by the defendant is the fact that when this action was originally brought in 1994 the claim was made solely for common law fraud and misrepresentation. In October 1997 the plaintiff moved to amend the complaint to add a CUTPA count but the amendment was not acted on until January 1999, just a few months before trial. The Second Circuit in U.S. Football League v. NFL, 887 F.2d at pp 413-414 commented on Hensley v. Eckerhart, 461 U.S. 424 (1983) and made the following relevant remarks regarding this issue:" InHensley the Supreme Court noted that work on an unsuccessful claim that is based on different facts and legal theories than a successful one may not be included in the fee awarded . . . However, a plaintiff's diverse claims for relief may `involve a common core of facts or . . . be based on related legal theories . . . In that instance. `Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis.'" cf Russell v. Dean Witter Reynolds Inc., 200 Conn. 172,194 (1986), also see Verysyss Inc. v. Holbrook, 8 CSCR 855
(1993). Relying on Russell the court in Verysyss Inc. reasoned that a plaintiff who prevailed on all its claims should not suffer a reduction in attorney's fees merely because some of those claims were not a violation of CUTPA or the Uniform Trade Secrets Act. The court noted a major portion of the litigation CT Page 10743 involved claims under those two acts and those claims were not made merely as a vehicle to garner attorney's fees. The court further noted that all of the acts of the defendants in the case before it could be regarded as unfair and deceptive. Thus all of the fees incurred could be regarded as related to pursuit of the CUTPA cause of action. Therefore the court concluded that an award of such fees could be seen as effectuating the policy of encouraging private litigation to enforce CUTPA.
But this is not what is involved here. How could it be said rationally that it serves the policy of encouraging private litigation to enforce CUTPA to award attorney's fees for work done in a case before CUTPA even became a consideration? Awarding attorney's fees before that point would provide a windfall to litigants or counsel unrelated to encouraging meritorious CUTPA litigation.
But this reasoning only goes so far and it would be inappropriate for the court to ignore the broad ameliorative purposes of CUTPA and the goals sought to be accomplished by the award of attorney's fees. Thus, the court cannot agree with the defendant's position that CUTPA can only be considered as a factor in this case and the court can only be concerned with enforcing its policies from the date that the amendment granting the right to pursue the CUTPA count was granted in January 1999. The appropriate date for the court is the date serious work began on the CUTPA claim. The records submitted by plaintiff's counsel indicate that was October 14, 1997 when research was first done on the CUTPA claim. Shortly, thereafter the request to amend was filed and from that date defense counsel was put on notice of the possibility of a CUTPA claim. Also, it must be assumed that having prepared and filed the amendment, plaintiff's counsel expected and conducted the litigation as if the CUTPA claim would be allowed as it eventually was. Once counsel started doing work toward preparing the amendment and had filed the amendment, it is impossible to separate out what portions of the work expended by plaintiff's counsel went toward the common law claims and which portion to the CUTPA claim — there was a common core of theory and fact between the CUTPA and common law claims in this case. The base figure the court will use before applying the Johnson
guidelines is that sum representing $150 as an hourly rate multiplied by the hours spent by plaintiff's counsel after October 14, 1997 when the first CUTPA research is noted in the billing record. That figure comes to $32,840. CT Page 10744
The question then becomes should this figure be adjusted upward or downward using the Johnson guidelines. The court will now discuss the 12 Johnson guidelines.
(1) Time and Labor Required
Considering that this litigation involved a three-week trial and the activity in the file since CUTPA became a factor was fairly extensive regarding discovery settlement attempts, and motion practice the court cannot say the hours spent by plaintiff's counsel was unreasonable. The hours spent reflect the work of Attorney O'Brien. There was no over-utilization of lawyers on the case or exorbitant use of non-lawyer staff to prepare the case. This is a neutral factor largely reflected in the lodestar figure and not requiring an adjustment in the appropriate fee demand.
(2) The Novelty and Difficulty of the Ouestion
The court believes that the issues raised by this case were not particularly novel or difficult. The CUTPA and common law claims involved typical allegations of fraud and misrepresentation. CUTPA claims for unfair trade practices can involve arcane questions or issues dealing with the effect of certain practices across various markets and consumer groups. This was a case involving deceptive practices, basically misrepresentations about the value of a business up for sale there was nothing peculiarly factually or legally complicated about presenting the CUTPA or even common law claims. Oddly enough, the CUTPA claim legally is easier to prove than a claim of common law fraud and the CUTPA proscribes a broader range of activity than a common law action for innocent misrepresentation. See discussion in Langer, Morgan, and Belt at § 2.3 at pp. 12-21. Importantly, the CUTPA preponderance of evidence standard of proof is lower than that for common law fraud. Even as to the work involved in preparation of the charge, the court simply relied on the model charge in the appendix to Langer, Morgan, and Belt and added language to cover the "business context" variation of the "isolated transaction" limitation on CUTPA developed by the Massachusetts courts and discussed in the motion to set aside the verdict.
There were several evidentiary issues and numerous documents involved in the case. One of the parties was deceased and counsel was required to pursue several evidentiary avenues over a period CT Page 10745 of years to properly present his case. For example, he had to familiarize himself with the operation of liquor stores and state supervision over them and their licensing. He did this with skill and thoroughness. However, the court can only say that this at most was a moderately complex case and does not require that the fee be adjusted upward.
(3) The Skill Requisite to Perform the Legal Service Properly
Counsel for the plaintiff as well as for the defendant are both excellent and skilled attorneys, plaintiff's counsel presented his case in an efficient, organized, understandable, and thorough manner. This is a neutral factor since the case legally and factually was in the moderately complex range.
(4) Preclusion of Other Employment
Counsel does not represent that other employment was made unavailable due to conflicts of interest arising from taking this case. He works in a firm where the vast majority of business is insurance defense work and there is much work available that can be billed directly.
It is difficult for the court to use this factor to adjust the lodestar figure up or down, however, since the court cannot speculate as to what income was lost to the firm as a result of counsel's employment on this case.
(5) Customary Fee
The court accepts counsel's representation that the appropriate fee for this lawyer would be $150 per hour. He received $125 per hour from Judge Nevas for his work in a § 1983 case in federal court in 1993 and since then has participated in CLE training and been involved in litigation. Also, the court cannot say $150 per hour for this type of case is unreasonable by community standards for cases of this type.
(6) Whether Fee is Fixed or Contingent
The fee arrangement here is a so-called "hybrid" type. Counsel was paid a retainer of $10,000 which would be reduced from a 33.3% contingency award from the amount awarded. Johnson
indicated that fee arrangements are helpful in demonstrating the attorney's fee expectations. Such agreements should not dictate CT Page 10746 the court's award, however, since the criterion is not what the parties agreed to but what is reasonable. Clark v. AmericanMarine Corp. , 320 F. Sup. 709, 711 (E.D. al., 1970). The Clark
court noted that conceivably a client could have agreed to a fixed fee which might be more than the court allows or the client can agree to a contingency fee representing a sum greater than the court might ultimately award. The Johnson court at488 F.2d, p. 718 did say: "In no event, however, should the litigant be awarded a fee greater than he [sic] is contractually bound to pay, if indeed the attorneys have contracted as to amount."
(7) Time Limitations Imposed By Client or Circumstances
There is no specification by counsel as to what other legal work of counsel was delayed by his commitments to this case or the amount of such work that was delayed.
(8) The Amount Involved and the Results Obtained
The amount of damages demanded was over $300,000 and the award was for $95,000; as the plaintiff notes this is not an insignificant figure. Plaintiff's counsel is correct in pointing out that the cases make clear that an award of attorney's fees even in excess of the verdict is not necessarily inappropriate, cf. Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 194
(1980), nor is an award representing 60% of the damages on its face inappropriate. Versyss, Inc. v. Holbrook, 8 CSCR 855 (1993).
This is true because one of the purposes of awarding attorney's fees is to enhance the CUTPA remedy and encourage CUTPA litigation.
But the nature of the suit must be considered in terms of its general effect on protecting consumers or competitors from unfair or deceptive practices. Johnson indicates such considerations would be the type of factors that would warrant enhancing a fee. In the Russell v. Dean Witter Reynolds case, attorney's fees were allowed under our Uniform Securities Act and the practices alleged and proven if uncorrected could present a danger to large numbers of private investors. In Versyss, a company alleged theft of its trade secrets by apparently several former employees. CUTPA litigation in both these areas should be encouraged since broad consumer and competitor interest are involved and case results can send a message to industry and employees which might control future misdeeds. CT Page 10747
In this CUTPA claim we have, giving the jury decision its full effect, fraudulent acts and failures to act, misrepresentations by a private seller of an owner run liquor store, and reliance in part on family connections to foist an unprofitable store on unsuspecting buyers. Though the harm to these plaintiffs was unfortunate and real enough it is not the type of CUTPA litigation and the verdict was not the type of CUTPA result which will have broad and instructive effect on marketplace transactions — indeed this transaction was unique because of its factual circumstances. Certainly a fee enhancement is not warranted under this criteria.
(9) The Experience, Reputation, and Ability of the Attorneys
This lawyer was skillful in presenting his case and organizing his proof in a case involving many disparate facts. Plaintiff's counsel, in fact, both counsel, are very able and experienced lawyers.
(10) Undesirability of the Case
The case did require fairly extensive factual investigation. Deception cases even under CUTPA are not easy to prove and the chances of success cannot certainly be promised. This case was rendered somewhat more undesirable due to the fact that another lawyer had to be examined by plaintiff's counsel regarding certain unpleasant matters.
(11) Nature and Length of Relationship With the Clients
There was no prior existing relationship between these clients and the attorney's office so there is no indication counsel varied his fee because of such considerations. SeeJohnson at 488 F.2d, p. 719.
(12) Awards in Similar Cases
As indicated previously, the facts of this CUTPA deception case are somewhat unique so it is difficult to talk in terms of "similar" cases. Intentional common law fraud, if proven, provides for punitive damages, i.e., attorney's fees, but those cases are not numerous enough to provide an ascertainable pattern or guideline for the award of attorney's fees in this case.
A consideration of the Johnson factors does not lead the CT Page 10748 court to adjust the award of attorney's fees either upward or downward from the base or lodestar figure of $32,840. This figure represents the hourly rate times the appropriate hours relevant to the CUTPA claim.
Corradino, J.